**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES,<br>     *Plaintiff,*<br><br>     v.<br><br>JONATHAN VELEZ,<br>     *Defendant.* | No. 3:17-cr-00150 (VAB) |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Jonathan Velez ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release ("COVID-19"), ECF No. 658 (Jan. 28, 2021) ("Def.'s Mot."); Mem. in Supp. of First Step Act Mot. for Immediate Release Under First Step Act (Compassionate Release), ECF No. 661 (Feb. 2, 2021) ("Def.'s Mem.").

The United States (the "Government") opposes his motion. Gov't's Mem. in Opp'n to Def.'s Mot. for Compassionate Release, ECF No. 675 (Feb. 12, 2021) ("Gov't Opp'n.").

For the reasons set forth below, Mr. Velez's motion for compassionate release is **DENIED**.

## I.   BACKGROUND

On July 12, 2017, a grand jury returned an indictment against Mr. Velez and thirteen co-conspirators, charging him with conspiracy to distribute and to possess with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) and 846 and use of a telephone to facilitate commission of a drug-trafficking felony in violation of 21 U.S.C. § 841(a)(1). Indictment, ECF No. 14 (July 12, 2017).

On August 6, 2018, Mr. Velez pled guilty to Count One of the Indictment. Plea Agreement, ECF No. 269 (Aug. 6, 2018).

On July 2, 2020, the Court sentenced Mr. Velez to a term of imprisonment of 78 months; a term of supervised release of four years; and a special assessment of $100. J., ECF No. 556 (July 2, 2020).

On January 28, 2021, Mr. Velez moved for a reduction of sentence under 18 U.S.C. §3582(c). Def.'s Mot.

On February 2, 2021, Mr. Velez filed a memorandum in support of his motion for compassionate release. Def.'s Mem.

On February 12, 2021, the Government opposed Mr. Velez's motion. Gov't Opp'n.

On March 2, 2021, the Court held a telephonic hearing on the motion. Min. Entry, ECF No. 692 (Mar. 2, 2021).

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court only may grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

## III.   DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) (slip op.) ("[B]ecause [Mr.] Gonzalez – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 976 F.3d at 230, 235-36) (internal citations omitted).

Mr. Velez moves for compassionate release because his "vulnerability to COVID-19 is an extraordinary and compelling reason for a reduction in sentence to time served." Mem. at 14 (emphasis omitted).[1] He argues that "[t]he present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes," and that he faces a "grave risk . . . from continued incarceration" given the pandemic. *Id.* at 14-15. He argues that "[j]ails and prisons are among the most dangerous places to be during an epidemic," as "[i]nmates are confined in close proximity and the staff leave and return daily." *Id.* at 18. He

---

[1] Though Mr. Velez notes "the serious danger to certain high-risk individuals" posed by COVID-19 and argues that "[his] health conditions plac[e] him squarely in the highest fatal risk group," *see id.* at 35 n.55, his memorandum does not set forth any medical conditions Mr. Velez allegedly has or suffers from, nor has Mr. Velez provided the Court any medical records or other evidence of any such conditions.

argues further that there is evidence that the Bureau of Prisons ("BOP") has failed in several ways to mitigate the spread of the coronavirus at its facilities generally. *Id.* at 17-18.

With respect to the § 3553(a) factors, Mr. Velez argues that "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents." *Id.* at 20. He argues that his "conduct while in prison establishes that the purposes of punishment have been met," as Mr. Velez "is in a residential drug program and has remained ticket free," allegedly showing that "he no longer poses a threat to public safety, and that granting him compassionate release would not endanger the community." *Id.* at 21.

Finally, with respect to exhaustion, he argues that the exhaustion requirement should be waived for several reasons, including its "futility and potentially irreparable harm," and that "[w]aiting for [him] to exhaust his administrative remedies would only compound his risk of exposure to COVID-19." *Id.* at 34; *see also id.* at 21-33 (setting forth the legal basis for its argument that the Court has authority to waive the 30-day exhaustion requirement).

The Government opposes Mr. Velez's motion. Gov't Opp'n. The Government argues with respect to the extraordinary and compelling circumstances prong that Mr. Velez has not shown sufficient reasons for release because he "has not identified any medical condition(s) that make [him] medically vulnerable to COVID-19," or even "any condition that might place him at an increased risk of severe illness from COVID-19." *Id.* at 9-10 (emphasis omitted). The Government argues that "[a]ccording to the [Presentence Report ("PSR")], [Mr.] Velez is a healthy young man who does not suffer from any medical conditions." *Id.* at 10. The Government also argues that the BOP is undertaking "significant measures to protect the health of the inmates in its charge and its

employees," *id.* at 6, measures which, "[t]aken together, . . . are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution," *id.* at 7.[2]

As to the § 3553(a) factors, the Government argues that the nature and the circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, Mr. Velez's history and characteristics, consideration of deterrence and the need to protect the public, and the need to avoid unwarranted sentencing disparities, all weigh in favor of Mr. Velez serving his full sentence. *Id.* at 10-16. In the Government's view, Mr. Velez "has failed to demonstrate that he is not a danger to the safety of the community." *Id.* at 16-17.

The Court will address each of the relevant factors in turn.

### 1. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

As some courts in this District have observed, "[e]ven where exhaustion is seemingly mandated by statute . . ., the requirement is not absolute." *United States v. Perez*, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020) (quoting *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)). Moreover, "[a]lthough the Second Circuit has not addressed this issue, [d]istrict [c]ourts in this Circuit have also concluded that the Government can waive or forfeit exhaustion," interpreting the exhaustion requirement not as a jurisdictional rule, but a claims-processing rule. *United States v.*

---

[2] As of the date of this Order, there were 15 active inmate cases and 9 active staff cases of COVID-19 at Mr. Velez's facility, Schuylkill Federal Correctional Institution ("FCI Schuylkill"). Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Mar. 5, 2021).

*Tyson*, No. 3:13-cr-002 (MPS), 2020 WL 3451694, at *2 (D. Conn. June 24, 2020) (citing *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at *4-5 (S.D.N.Y. Apr. 14, 2020) ("The exhaustion requirement in Section 3582(c) is therefore properly understood as a claim-processing rule . . . . [O]ne key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion."); *United States v. Gonzalez*, No. 3:17-cr-00062 (JAM), 2020 WL 2079110, at *7 (D. Conn. Apr. 30, 2020) (indicating that, "if the Government decides to waive any objection to the exhaustion requirements," the Court would rule on the merits of the motion).

The Government does not discuss the exhaustion requirements in its briefing. The Court therefore "need not decide in this case whether [Mr. Velez] has exhausted his administrative remedies, or whether he is excused from doing so, because the Government has forfeited the issue." *Tyson*, 2020 WL 3451694, at *2.

Accordingly, as the Government has not argued that Mr. Velez failed to exhaust his administrative remedies or that exhaustion is otherwise a barrier to relief, the Court continues on to the merits of Mr. Velez's motion.

### 2. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 89-90 (D. Conn. Apr. 30, 2020) (granting compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term

of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (slip op.) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Courts across this Circuit have routinely concluded, however, that the coronavirus pandemic, taken alone, does not constitute an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Turnbull*, No. 16-CR-809 (VM), 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020) ("Numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.") (collecting cases); *United States v. Washington*, No. 14-CR-215, 2020 WL 1969301, at *4 (WD.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for release where defendant claimed medical conditions, but submitted no medical evidence showing that COVID-19 posed an increased risk to him in particular, despite presence of COVID-19 at his facility); *United States v. Figueroa*, No. 15-CR-495 (ARR), 2021

WL 664004, at *3 (E.D.N.Y. Feb. 19, 2021) (collecting cases, and noting that "although COVID-19 poses a serious threat to the health of inmates housed in federal prisons, [the defendant] has not shown that his own risk is any greater than that of the general inmate population"); *United States v. Gonzalez*, No. 3:09-cr-127 (SRU), 2021 WL 681142, at *8 n.8 (D. Conn. Feb. 22, 2021) (slip op.) ("The general threat of COVID-19 in prisons, without more, is not an 'extraordinary and compelling reason' warranting an inmate's release." (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Though Mr. Velez argues that his "health conditions plac[e] him squarely in the highest fatal risk group," Def.'s Mem. at 35 n.55, and cites his "unique susceptibility to contracting the fatal disease while housed in a crowded facility," *id.* at 1, he does not explain or provide any record evidence as to what these alleged medical conditions are or why he is particularly susceptible either to contracting or suffering serious illness should he contract COVID-19. To the contrary, the Presentence Report indicates that Mr. Velez stated that "he does not suffer from any medical conditions and has never experienced any major hospitalizations." Presentence Report, ECF No. 425 ¶ 53 (Nov. 8, 2019) ("PSR"). And though Mr. Velez argues that extraordinary and compelling reasons may generally be found in cases even where the defendant does not suffer from debilitating medical conditions, Def.'s Mem. at 4-6, he offers no such extraordinary and compelling reason as to why he in particular should be released at this time.

In any event, because Mr. Velez's motion fails for other reasons, specifically, under the § 3553(a) factors, the Court need not definitively resolve whether the COVID-19 pandemic generally, or its presence at FCI Schuylkill, constitutes an extraordinary and compelling reason for release.

### 3.  Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Velez argues that his "conduct while in prison establishes that the purposes of punishment have been met," as he "is in a residential drug program and has remained ticket free." Def.'s Mem. at 21. He argues that a sentence of time served is sufficient to accomplish the goals of sentencing, as "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents," and "the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." *Id.* at 20.

The Government argues that "the sentencing factors weigh against a sentence reduction." Gov't Opp'n at 10 (emphasis omitted). The Government argues that the nature and circumstances of the offense support Mr. Velez serving his full sentence, as Mr. Velez's offense included him "selling significant amounts of heroin . . . for substantial amounts of money"; "obtaining heroin . . . on credit"; "providing thousands of dollars . . . to obtain more heroin"; and traveling interstate to sell heroin. *Id.* at 11. As the Government notes, "[a]t the time of [Mr.] Velez's arrest, investigators found packaged heroin on [his] person," as well as "a bag containing . . . compressed heroin, numerous wax folds of bagged heroin, . . . . [and] a .38 caliber revolver loaded with four rounds of ammunition," which Mr. Velez admitted belonged to him. *Id.* at 11-12. The Government argues that Mr. Velez participated in the conspiracy "over a lengthy period of time despite having

three prior convictions for felony narcotics crimes, despite having served prison sentences as a result of these prior convictions, despite being on . . . state probation . . . [and] despite there being an active arrest warrant" out for him. *Id.* at 12 (citations and emphasis omitted). In the Government's view, Mr. Velez's conduct, including unlawfully possessing and using firearms to facilitate narcotics trafficking activities, was "incredibly dangerous and reckless" and justifies him serving his full sentence. *Id.* at 12-13.

The Government also argues that Mr. Velez's history and characteristics, in particular his criminal history, weigh against release. As the Government argues, Mr. Velez has three prior convictions for felony narcotics offenses, as well as prior arrests for child pornography and related offenses, motor vehicle offenses, and a probation violation. *Id.* at 13-14. The Government argues that "[b]ased on his well-established history, there is a significant risk that [he] will return to heroin trafficking and illegal firearms activities," even if he were released to home confinement. *Id.* at 17.

Finally, the Government argues that Mr. Velez remains a danger to the community, as his "prior criminal convictions, his prior jail sentences[,] and the threat of more severe sanctions have not deterred [him] from continuing to engage in criminal activity." *Id.* at 15. In the Government's view, Mr. Velez "and his associates were selling enormous amounts of dangerous opioids in Connecticut and Massachusetts," which constitutes "extremely serious and dangerous criminal conduct" given the widespread opioid epidemic in New England. *Id.* at 16.

The Court agrees.

Here, the balance of the § 3553(a) factors, Mr. Velez's underlying criminal offense, his lengthy criminal history, and the absence of anything in the record suggesting that he is no longer a danger to the community, weighs against his immediate release.

As to the nature and circumstances of the offense, as part of his underlying offense conduct, Mr. Velez conspired with others to distribute large quantities of heroin and traveled interstate to obtain these narcotics. PSR ¶¶ 10-11. At the time of his arrest, he had heroin on his person, and investigators searching his residence discovered other forms of heroin and related paraphernalia, as well as a loaded firearm. *Id.* ¶ 12. The fact that Mr. Velez "was in possession of a firearm during the commission of the instant offense," indeed, a loaded firearm, despite "two prior convictions that involve narcotics," *id.* ¶ 92, indicates that Mr. Velez's offense was particularly dangerous and weighs against release. As the Court observed at sentencing, "the distribution of drugs, particularly a drug like heroin, has a devastating impact on communities," and "then, coupled with the presence of guns, it's an even more lethal combination." Sentencing Tr., ECF No. 676 at 24:3-7 (February 16, 2021).

Mr. Velez's criminal history, which dates back to 2012, *see* PSR ¶ 31, also weighs against release. Mr. Velez has a criminal history score of IV, *see id.* ¶¶ 6, 36, based on his numerous convictions, including photographing an unsuspecting nude person, *id.* ¶ 31; and multiple narcotics offenses, *id.* ¶¶ 32-33, as well as the fact that he committed the instant offense while serving a two-year term of probation, adding two points to his criminal history score, *id.* ¶¶ 35-36.

Mr. Velez's history and characteristics, outside of his history of criminal convictions and arrests, similarly weigh against release. Mr. Velez has a minimal employment history and has held only two jobs, for a total of approximately seven months, throughout his life. *Id.* ¶¶ 65-66; *see also id.* ¶ 94 ("Mr. Velez's employment history is at best sporadic."). And, as the Government represents, "[i]nvestigators . . . identified [Mr.] Velez as being associated with the Latin Kings gang." Gov't Opp'n at 13 (also citing PSR ¶¶ 52 (noting that Mr. Velez had tattoos stating, "Kings High," and that he goes by the nickname "King Jay")).

Mr. Velez's sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Given Mr. Velez's criminal history, which includes repeat offenses for drug-related and other conduct, the significant amount of drugs and the loaded firearm involved here, and his minimal employment history, among other reasons, he is not a suitable candidate for release at this time. *See United States v. Gamble*, 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (slip op.) (denying motion for release "because Defendant is ill suited for home confinement because of his lengthy criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-cr-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (slip op.) (denying motion for compassionate release where defendant had sixty-six months left of his sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic").

While the Court notes favorably that Mr. Velez has not had any disciplinary infractions while incarcerated, these efforts, while commendable, are not yet sufficient to warrant a finding that his continued imprisonment no longer remains necessary to ensure the safety of the community.

Accordingly, having considered and weighed all of these factors as well as others set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

## IV.    CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of March, 2021.

                                                        /s/ Victor A. Bolden
                                                Victor A. Bolden
                                                United States District Judge